## McIntosh v. McIntosh.

(Decided January 29, 1924.)

### Appeal from Perry Circuit Court.

1. Divorce—Decree Awarding Alimony Modified.—A decree allowing alimony of $15.00 per month, and restoring to the wife a half interest in a small tract of land, was modified as regarded royalties for coal mined, so as to increase the royalties paid to the wife.

2. Divorce—Decree Awarding Custody of Children Not Disturbed.—A decree awarding custody of youngest child to mother and three elder to the father held not to be disturbed.

3. Divorce—Decree as to Custody of Children Should Provide for Visits to Parents.—A decree awarding custody of different children to each parent should make provision authorizing the chil-

dren to visit their parents or to be seen by them in a way suitable to the situation of the parties.

MILLER & CRAFT for appellant.

JESSE MORGAN, F. J. EVERSOLE, W. C. EVERSOLE, JOHN E. CAMPBELL, S. M. WARD, S.S. COMBS and MORGAN, EVERSOLE & BOWLING for appellee.

Opinion of the Court by Judge McCandless—Reversing.

The appellant sued for divorce, alleging cruel and inhuman treatment, and also sought alimony and the custody of her children. The answer consisted of a traverse and a counterclaim in which appellee asked a divorce on the ground of lewd and lascivious conduct upon the part of appellant.

The court granted a divorce to both parties, gave appellant the custody of her infant child, Elijah, then aged 16 months, allowed her $15.00 per month alimony and restored her a one-half interest in a small tract of land known as the Morgan land, the consideration for which had been paid jointly by the parties. It also awarded appellee the custody of their three older children, then aged nine, six and three years respectively. Some two years have elapsed since that judgment was entered, which should be added in considering the ages of the children.

The court assigned no reason for giving a divorce to both parties. While unusual and unique it did not seem to influence his decree as to alimony and custody, and need not be further discussed.

The parties had been married about ten years at the time the suit was filed; the family consisted of the parties and their four children, the husband's father and an older daughter of the husband.

The wife is shown to have been industrious, economical and thrifty, but inclined to want her way, and it seems that to some extent she nagged her husband. There is evidence that at the beginning of their married life the husband was also industrious, but of late it seems he had been rather the reverse.

' By his labor he had paid for a small tract of land containing about twenty acres which he purchased from his brother some years since. The wife sold some timber and her interest in some land and a cow, in all amounting to

nearly $300.00, and with the proceeds, together with some money of his own, the husband purchased another tract of land of one Floyd Morgan at a price in excess of $400.00. The father, who lived with them, owned a small tract, partly in his own right and partly as tenant by curtesy; these three thacts adjoined, and small portions thereof were cultivated by the husband, and his wife also raised a garden and truck patch, and kept boarders and thereby earned some money.

Part of this land is underlaid with a good vein of coal, there being one acre on the Morgan tract, and about three acres on the tract belonging to appellee, about 13 acres on that belonging to his father. In April, 1919, the husband and father leased the coal on these three tracts of land to the Solar Coal Company, in consideration of a royalty of 10 cents per ton of the coal mined, with a minimum royalty of $100.00 per month. For the two years ending April 1921, these royalties amounted to $3,400.00; it being estimated that the coal would run over 6,000 tons to the acre. It will thus be seen that the father and son have been drawing in excess of $150.00 per month from these sources, it not being disclosed from which particular part of the land the coal is being extracted.

It is argued that the income to which the son is entitled is only one-third of that of the father, or one-fourth of the total royalty which at times is as low as $25.00 per month; that in addition to this he has an income of $5.00 per month from the rent of a small house, making a total income of $30.00 per month, or not exceeding $40.00; further, that he is ruptured and has a weak ankle and is therefore unable to perform physical labor; that he is encumbered with the care of three children and that $15.00 per month alimony is liberal under the circumstances, especially in view of the fact that appellant is herself able to perform physical labor.

We have some doubt as to the extent of appellee's physical disability, but are not inclined to disturb this item of allowance except to this extent, it may be that the minerals will be first extracted by the company from appellee's three acres of land. If this should prove true he might be unable to maintain the alimony after this was done. We think the judgment should be corrected to require the coal company to make separate reports of the coal mined on this land, which is known in the record as the "John McIntosh" land, and to pay direct to the ap-

pellant one-third of the royalties accruing thereon, pro-. vided that if this should ever fall below $15.00 in any one month, the appellee should make up the deficiency to that amount.

We are further of the opinion that under the evidence the appellant paid at least two-thirds of the consideration for the Floyd Morgan tract of land and that amount should be restored to her and she should be paid two-thirds of the royalties accruing from the coal mined under that land, instead of one-half as adjudged by the lower court, this to be done in accordance with the decree requiring a survey of the land and a payment direct to appellant by the company.

As to the custody of the children, the charges of lewd and lascivious conduct upon the part of appellant were not borne out by the evidence, though it is shown that she was not as tractable or as dutiful toward her husband as could be desired.

On the other hand, it is shown that while on two occasions he had unjustifiable altercations with his wife in which he treated her cruelly, he has always been kind and considerate to his children, and aside from the two occasions mentioned no viciousness is shown. He has a small farm which furnishes a refuge for the children. He is not dissolute or thriftless, indeed, seems rather stingy, but is inclined to be indolent and trifling, spending a large portion of his time in idleness and playing cards. It could be wished that the children might have a better home; during their tender years it would be much better if they could be with their mother, and if she had a home to which they might be carried and was able to maintain them with such allowances as could be made by the husband, we would be disposed to further such wish, especially as to those under ten years of age, but the record does not disclose any ability upon her part to do this, and it would seem that the youngest is all for which she is able to care, so that in this respect we do not feel authorized to interfere with the judgment of the chancellor except that no provision is made in the judgment authorizing the children to visit their parents or to be seen by them. This permission should be accorded in a way suitable to the situation of the parties.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.